IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

I. H., a minor, by and                   *
through her Parents and Next Friends,
ISRAEL HUDSON and                     *
SHAVONICA HUDSON
3055 Albacore Circle, Apartment I7        *
Silverdale, WA 98315
                                        *
and
                                        *
ISRAEL HUDSON, Individually
3055 Albacore Circle, Apartment I7        *     Case No. _____
Silverdale, WA 98315
                                        *
and
                                        *
SHAVONICA HUDSON, Individually
3055 Albacore Circle, Apartment I7        *
Silverdale, WA 98315
                                        *

       *Plaintiffs,*
                                        *
v.
                                        *
JESSICA B. COLWILL, MD,
11512 Belmont Lake Drive, #103         *
Las Vegas, NV 89135
                                        *
and
                                        *
SOUTHERN MARYLAND WOMEN'S
HEALTH CARE P.A.,                    *
Serve on: Resident Agent Lisa E. Polko, M.D.
23000 Moakley Street, Suite 201         *
Leonardtown, MD 20560
                                        *
and
                                        *

ST. MARY'S HOSPITAL                                          *
OF ST. MARY'S COUNTY, INC.
t/a MEDSTAR ST. MARY'S HOSPITAL                             *
Serve on: Resident Agent
The Corporation Trust Incorporated                          *
2405 York Road, Suite 201
Lutherville, Timonium, MD 21093                             *

 *Defendants*                                          *

* * * * * * * * * * * * *

## COMPLAINT

  Plaintiffs, I. H., a minor, by and through her Parents and Next Friends, Israel Hudson and Shavonica Hudson; Israel Hudson, individually; and Shavonica Hudson, individually, and by and through their undersigned counsel, Stephen C. Offutt, Richard R. Martell, and Wais, Vogelstein, Forman & Offutt, LLC, hereby sue St. Mary's Hospital of St. Mary's County, Inc. t/a Medstar St. Mary's Hospital, Southern Maryland Women's Health Care, P.A., and Jessica Colwill, MD  and for their causes of action state as follows:

  1.  This medical negligence claim is instituted pursuant to Md. Cts. & Jud. Proc. §§ 3-2A-01 – 3-2A-10, for the recovery of damages in excess of Thirty Thousand Dollars ($30,000.00).

  2.  The Plaintiffs hereby attach and incorporate by reference the Certificates of Qualified Expert and Expert Reports of Aaron Caughey, MD, PhD and Christina A. Tice, CNM, RN, MSN.

## JURISDICTION AND VENUE

  3.  The United States District Court for the District of Maryland has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  Because Plaintiffs are citizens of the State of Washington and Defendants are citizens of the States of Maryland and Nevada, complete diversity exists between the Plaintiffs and Defendants.  Plaintiffs allege that their claims exceed $75,000, exclusive of interest and costs.  As a result, the United States District Court for

the District of Maryland has original diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1).

4.       Venue is proper in the United States District Court for the District of Maryland pursuant to 29 U.S.C. §1391(b)(2) and (3)  and in the Southern Division of that court pursuant to 28 U.S.C. 100(2) on the grounds that all or a substantial portion of the acts giving rise to the claims alleged herein occurred in St. Mary's County in the Southern Division of the United States District Court for the District of Maryland.

## PARTIES

5.       Defendant St. Mary's Hospital of St. Mary's County, Inc. t/a Medstar St. Mary's Hospital ("Medstar St. Mary's Hospital") is, and at all times relevant hereto was, a Maryland corporation engaged in the operation of a hospital, providing obstetrical services and other health care services to individuals in need thereof.  At all times relevant hereto, Medstar St. Mary's Hospital acted directly and/or by and through its actual and/or apparent agents, servants, and/or employees, including, but not limited to Tomika Gaymon, RN, Jessica Poetker, RN, Kayla Stalcup, RN, and Alyssa Robertson, RN.

6.       Defendant Southern Maryland Women's Health Care, P.A. is, and at all times relevant hereto was, a Maryland corporation engaged in the operation of a medical practice, providing obstetrical services and other health care services to individuals in need thereof.  At all times relevant hereto, Southern Maryland Women's Health Care, P.A. acted directly and/or by and through its actual and/or apparent agents, servants, and/or employees, including, but not limited to Jessica B. Colwill, MD.

7.       Defendant Jessica B. Colwill, MD is, and at all times relevant hereto was, a physician licensed to practice obstetrics in the State of Maryland.  At all times relevant hereto, Dr.

Colwill acted individually and/or as the actual and/or apparent agent, servant and/or employee of Southern Maryland Women's Health Care, P.A.

## FACTS COMMON TO ALL COUNTS

8.       On November 7, 2016, Shavonica Joyce Hudson was a 26 year-old G2P1 at 41 weeks gestational age who had had a generally uncomplicated pregnancy. Her prior pregnancy was noted to have been complicated by preeclampsia and hypoxic ischemic encephalopathy (HIE) of her newborn of an unknown etiology. She presented to the Medstar St. Mary's Hospital in active labor at approximately 1:58 a.m. and reported that her contractions started at midnight.

9.       At 2:10 a.m., Nurse Tomika Gaymon performed a cervical exam and found Ms. Hudson to be 3 cm dilated, 60% effaced, and -2 station. At 2:00 a.m. the patient was placed on a fetal heart rate monitor. At 3:45 a.m., epidural anesthesia was started. At 4:20 a.m., Nurse Gaymon performed a cervical exam showing 5 cm dilation and -2 station. At 5:20 a.m., Nurse Gaymon performed a cervical exam showing 6 cm dilation and -1 station.

10.      The fetal heart tracing upon admission was reassuring with moderate variability and accelerations. Over the course of the first four hours of her admission, there were periods of minimal variability, and numerous fetal heart rate decelerations, both variable and late.  There were also periods where the fetal heart rate was not adequately assessed. At 6:34, there was a prolonged fetal heart rate deceleration.

11.      At 6:38 a.m., Nurse Gaymon performed a cervical exam showing 10 cm dilation and 0 station. The records indicate that a trial push occurred at 6:38 a.m., which was followed by a deceleration to 55 beats per minute (bpm) for approximately 1 minute. At 6:45 a.m. Nurse Jessica Poetker took a bedside report from Nurse Gaymon and began charting. She wrote "Strip noted to be moderate variability with HR in the 130's with variable decelerations with contractions. With

difficulty monitoring heartrate, Dr. Colwill called to the bedside. Recurring decelerations of the fetal heartrate to the 60's."

12.     At 7:18, Dr. Colwill wrote a note in which she described the fetal heart tracings as category I with contractions every 3 minutes and stated that the patient was in "[n]o acute distress." She also noted a history of "preeclampsia and son with HIE of unknown etiology." However, from 7:11 to 7:28, there were repetitive fetal heart rate decelerations down to the 60s with poor assessment of the fetal heart rate between.

13.     At 7:29 there was a prolonged deceleration that appeared to resolve by 7:35, and at that time, there was absent fetal heart rate variability. Over the next 10 minutes, there were several other recurrent fetal heart rate decelerations and a change in baseline up to the 150s-160s. A 1 liter IV bolus was begun at 7:25. Dr. Colwill placed an intrauterine pressure catheter at 7:30 and a fetal scalp electrode at 7:34. An amnioinfusion was started at 7:37. At 7:42, terbutaline and oxygen were administered. At 7:50, Dr. Colwill left the room.

14.     At 8:00, Dr. Colwill wrote a progress note in which she stated "fht: deep lates after ctx[,] position changes, ivf, iupc/fse placed, amnioinfusion started, terb 0.25mg sc given[,] cx: c/c/-1; not pushing effectively[,] after all interventions, fht cat II, baseline 160s with minimal variability, no decels, now with an accel." At 8:08, the amnioinfusion was complete, the fluid bolus was turned down, and the supplemental oxygen was removed. At 8:26, Nurse Kayla Stalcup recorded that ondansetron 4 mg was started.

15.     By 8:30, the fetal heart rate baseline had returned to the 130s. However, at 8:40, there was another prolonged deceleration that lasted for five minutes. At 8:43, Dr. Colwill returned to the room and under her direction, the patient pushed through two contractions. Following the first, the fetal heart rate experienced a deceleration to 65 beats per minute for 90 seconds, but didn't

get back to the baseline prior to the next contraction. Following the second contraction at 8:49, the fetal heart rate experienced a deceleration down to 45 beats per minute. The patient was put into knee-chest position and the fetal heart rate returned to 135. At 8:51, Dr. Colwill stated to the nurses "call if you need me" and left the room.

16.     After this deceleration, the FHR appeared to return to the 130s by 8:52, however, over the next 10 minutes, the baseline rose again into the 150s. At 8:59, recurrent late decelerations resumed. From 9:12 to 9:15, a prolonged deceleration occurred, followed by another late deceleration at 9:16. Starting at 9:23, the fetal heart monitoring strips show absent variability with periods of minimal variability. At 9:28, a nurse called Dr. Colwill and stated "patient remains in knee chest, Baseline 135-140 with minimal variability." Dr. Colwill responded "Give her another 10 minutes or so, then try pushing with her. If she has any decels, call me and I will come to the bedside."

17.     At 9:44, Nurse Stalcup recorded that the patient was turned from knee-chest to supine with slight right tilt. Nurse Stalcup "made D. Johnson CRN aware of pts FHR tracing and possible need for c-section." She then directed the patient to push at 9:48. During that push, the fetal heart tracing shows a deceleration to 55 bpm and the patient was turned to her left side. Dr. Colwill was called to the bedside and arrived in the room at 9:51. The patient resumed pushing in the lithotomy position at 9:52, but the fetal heart rate dropped to the 60's with each push. The patient was turned after each contraction.

18.     At 9:55, Dr. Colwill signed a c-section consent form and ordered Ancef to be administered. Dr. Colwill decided to attempt an operative vaginal delivery due to the late decelerations and non-reassuring fetal heart rate tracing and at 9:59, Dr. Colwill applied a kiwi

vacuum. The patient pushed with vacuum assist at 10:00. At 10:04, the patient pushed again with vacuum assist, but the vacuum popped off.

19.     Due to the fetal heart tracing, instead of continuing to attempt vaginal delivery, Dr. Colwill called a stat c-section at 10:05. The patient was taken to the operating room at 10:08. Fetal heart tracing ended at 10:04, but the fetal heart rate as measured by Doppler was in the 80's to 90's in the operating room.

20.     I. H. was delivered at 10:18 by cesarean section. The nurses involved in the care from 7:35 until the time of birth were Jessica Poetker, Kayla Stalcup, and Alyssa Robertson.

21.     I. H.'s Apgar scores were 2, 5, 6, and 7 at 1 minute, 5 minutes, 10 minutes, and 15 minutes, respectively. Umbilical artery blood gases were taken with a pH result of 6.83 and a base excess result of -18.8. The placenta was examined by a pathologist who found "Acute chorioamnionitis associated with reactive cellular changes. Placental infarction, microscopic. Interstitial hemorrhage."

22.     Thereafter, I. H. experienced a complicated course of treatment. At 5 hours of life, she was taken to Georgetown University Hospital for head cooling. She subsequently spent 15 days in the NICU prior to being discharged. Today, she suffers from spastic quadriplegic cerebral palsy as a result of hypoxic ischemic encephalopathy.

## COUNT I

### (Medical Malpractice – Minor's Claim)

23.     Plaintiffs repeat, re-allege, adopt, and incorporate by reference the above paragraphs of this Statement of Claim as if fully set forth herein.

24.     In their care and treatment of Shavonica Hudson and I. H., the Defendants, acting directly, individually and/or by and/or through their actual and/or apparent agents, servants, and/or employees, owed to Plaintiffs the duty to exercise that degree of care and skill which a reasonably

competent hospital, obstetrician, labor and delivery nurse, obstetric practice, and/or similar health care provider would have exercised under the same or similar circumstances.

25.     Defendants Southern Maryland Women's Health Care, P.A., acting directly, individually and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including but not limited to Jessica B. Colwill, MD, and Defendant Jessica B. Colwill, MD breached the aforesaid duty of care to Shavonica Hudson and I. H., and were negligent by:

    a.  Failing to properly recognize and interpret a non-reassuring fetal heart rate tracing.

    b.  Failing to recognize the threat posed by:

        i.   Repetitive late decelerations

        ii.  Repetitive variable decelerations

        iii. Recurrent deceleration occurring with every maternal push

        iv.  Absent variability

        v.   Lack or recovery following intrauterine resuscitative measures

    c.  Failing to properly respond to a non-reassuring fetal heart rate tracing.

    d.  Failing to provide appropriate interventions for the fetal heart rate decelerations.

    e.  Failing to review and monitor the fetal heart rate monitors in a timely and regular fashion.

    f.  Failing to properly and timely check the patient's status.

    g.  Failing to stay involved in the labor management.

    h.  Failing to closely observe the fetal heart monitoring strips starting at 6:35 a.m.

    i.  Failing to order cesarean section starting at 7:35 a.m.

    j.  Failing to take the patient to the operating room starting at 7:35 a.m.

    k.  Failing to effectuate delivery by 8:05 a.m.

l.  Allowing the patient to remain in the labor room in the second stage with passive descent.

m.  Failing to obtain a surgical consent starting at 7:35 a.m.

n.  Failing to expedite delivery after decelerations resumed at 8:40 a.m.

o.  Other negligent acts or omissions which may become apparent through the course of delivery.

26.     Defendant St. Mary's Hospital of St. Mary's County, Inc. t/a Medstar St. Mary's Hospital, acting directly, individually and/or by and/or through its actual and/or apparent agents, servants, and/or employees breached the aforesaid duty of care to Shavonica Hudson and I. H., and were negligent by:

a.  Failing to establish, have in place, and enforce appropriate policies, procedures, and protocols with regard to proper communication between labor and delivery health care providers, and failing to properly train, educate, and supervise health care providers with regard to these policies, procedures and protocols.

b.  Failing to establish, have in place, and enforce appropriate policies, procedures, and protocols with regard to management of patients in the labor and delivery unit, and failing to properly train, educate, and supervise health care providers with regard to these policies, procedures and protocols.

c.  Failing to establish, have in place, and enforce appropriate policies, procedures, and protocols with regard to communicating a non-reassuring fetal heart rate tracing to the appropriate physician or obstetrician, and failing to properly train, educate, and supervise health care providers with regard to these policies, procedures and protocols.

d.  Failing to establish, have in place, and enforce appropriate policies, procedures, and protocols with regard to implementing a proper nursing staff chain of command, and failing to properly train, educate, and supervise health care providers with regard to these policies, procedures and protocols.

e.  Failing to establish, have in place, and enforce appropriate policies, procedures, and protocols with regard to electronic fetal heart monitorings, and failing to properly train, educate, and supervise health care providers with regard to these policies, procedures and protocols.

f.  Failing to establish, have in place, and enforce appropriate policies, procedures, and protocols with regard to training nurses in labor management, and failing to properly train, educate, and supervise health care providers with regard to these policies, procedures and protocols.

g.  Failing to establish, have in place, and enforce appropriate policies, procedures, and protocols with regard to requiring the nursing staff to advocate for a high-risk patient, and failing to properly train, educate, and supervise health care providers with regard to these policies, procedures and protocols.

h.  Other negligent acts or omissions which may become apparent through the course of discovery.

27.     Defendant St. Mary's Hospital of St. Mary's County, Inc. t/a Medstar St. Mary's Hospital, acting directly, individually and/or by and/or through its actual and/or apparent agents, servants, and/or employees, including but not limited to Tomika Gaymon, RN, Jessica Poetker,

RN, Kayla Stalcup, RN, and Alyssa Robertson, RN breached the aforesaid duty of care to Shavonica Hudson and I. H., and were negligent by:

a.  Failure to identify, document, and communicate the concerning fetal heart monitoring strips.

b.  Failing to properly respond to the concerning fetal heart monitoring strips.

c.  Failing to identify and properly respond to evidence that there was fetal intolerance to the stresses of labor.

d.  Failing to properly and timely and with proper sense of urgency communicate the non-reassuring fetal heart rate pattern to the appropriate medical provider.

e.  Failing to timely and completely access and pursue the nursing chain of command in response to a non-reassuring fetal heart rate tracing and an apparent unwillingness of the attending obstetrician to change the plan of care for immediate delivery.

f.  Failure to ascertain the plan for delivery from the covering physician.

g.  Failure to advocate for the patient.

h.  Failure to call on other health care providers to intervene if necessary to assure a safe delivery.

i.  Failure to move the patient to the operating room starting at 7:35 a.m.

j.  Failure to advocate for immediate delivery starting no later than 8:50.

k.  Other negligent acts or omissions which may become apparent through the course of discovery.

28.     As a direct and proximate result of the above-mentioned deviations from the applicable standards of care by the Defendants, I. H. suffered and/or will suffer the following permanent injuries, among others:

    a.   Hypoxic-ischemic encephalopathy;

    b.   Perinatal depression;

    c.   Brain damage;

    d.   Metabolic acidosis;

    e.   Seizures;

    f.   Multi-organ damage;

    g.   Hepatic insult;

    h.   Cerebral palsy;

    i.   Developmental delay;

    j.   Cognitive and mental impairment;

    k.   Tone abnormalities;

    l.   Spasticity;

    m.  Neurological disabilities;

    n.   Physical impairment;

    o.   Significant conscious pain and suffering;

    p.   Emotional distress;

    q.   She is and will be permanently dependent upon others for her care;

    r.   She has and will continue to undergo serious and painful medical procedures;

    s.   She has and will continue to incur significant medical and other care expenses for which she and her parents are incapable or unable to pay;

    t.   Her earning capacity has been severely diminished; and

    u.   Other injuries and damages.

WHEREFORE, Plaintiff, I. H., a minor, by and through her Parents and Next Friends, Israel Hudson and Shavonica Hudson, brings this action against the Defendants and seeks damages that will adequately and fairly compensate her, costs, and such other and further relief as may be deemed appropriate.

## COUNT II

### (Medical Malpractice – Parental Claim)

29.    Plaintiffs repeat, re-allege, adopt, and incorporate by reference the above paragraphs of this Statement of Claim as if fully set forth herein.

30.    As a further direct and proximate result of the above-mentioned deviations from the applicable standard of care by the Defendants, Israel Hudson and Shavonica Hudson have suffered and/or will suffer the following injuries, among others:

    a.   They have incurred and will continue to incur substantial expenses for medical treatment and other care of I. H.;

    b.   They have suffered and will continue to suffer the loss of services, companionship, labor, assistance, etc. from their child, I. H.; and

    c.   They have suffered and will continue to suffer great emotional anguish and pain and suffering as a consequence of the Defendants' negligence as described above.

## RELIEF SOUGHT

WHEREFORE, as to each and every count pled, Plaintiffs respectfully request that this Court award them:

    a. Damages for Plaintiff's past and future medical expenses, past and future emotional pain and suffering and other compensatory damages in excess of $25,000,000.00;

    b. Attorneys' fees and other costs and expenses; and

    c. Any other relief to which Plaintiff is entitled.

## DEMAND FOR JURY TRIAL

The Plaintiff, by and through his undersigned counsel, hereby demands a trial by jury on all issues raised herein. Respectfully submitted,

**WAIS, VOGELSTEIN, FORMAN & OFFUTT, LLC**


  _s/Richard R. Martell_
Stephen C. Offutt (USDC Bar No. 06257)
Richard R. Martell (USDC Bar No. 29609)
1829 Reisterstown Road
Suite 425
Baltimore, Maryland 21208
(410) 998-3600
*Attorneys for Plaintiff*